MISSOURI INTERGOVERNMENTAL
RISK MANAGEMENT ASSOCIA-
TION, Plaintiff–Respondent,

v.

GALLAGHER BASSETT SERVICES, INC. and Gallagher Bassett Insurance Service, Defendants–Appellants.

No. 62548.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 27, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 25, 1993.

Application to Transfer Denied
June 29, 1993.

Frank N. Gundlach, William Michael Corrigan, Jr., Ann Elizabeth Buckley, St. Louis, for defendants-appellants.

Willard Dudley McCarter, St. Louis, for plaintiff-respondent.

GARY M. GAERTNER, Presiding Judge.

Appellants, Gallagher Bassett Services, Inc. and Gallagher Bassett Insurance Service, appeal from an order of the Circuit Court of the County of St. Louis entering summary judgment in favor of respondent, Missouri Intergovernmental Risk Management Association, on an action in contract. We affirm.

Missouri Intergovernmental Risk Management Association ("MIRMA") is a risk management corporation which provides self-insurance liability coverage for its members, which are various municipalities in Missouri. MIRMA entered into an Agreement for Services with appellants in July of 1981. An amended Agreement was signed in July, 1988. Under the terms of the Agreements, appellants were to provide claims management services for self-insurance programs provided by MIRMA to its members.

The City of O'Fallon was a member of, and was covered by the self-insurance program provided by, MIRMA and administered by Gallagher Bassett. In the summer of 1988, Mark Schneider filed suit in the United States District Court for the Eastern District of Missouri against the City of O'Fallon, its mayor, the city attorney, aldermen, the chief of police, and specified police officers. Pursuant to its agreement with MIRMA, appellants assumed supervision and management of the case and referred it to counsel for defense.

The events underlying Mark Schneider's lawsuit began on March 28, 1985. On that date, the City of O'Fallon filed a petition to condemn land that Schneider owned within the city limits. On August 5, 1985, an

order was issued by the Circuit Court of the County of St. Charles condemning the land and appointing condemnation commissioners to arrive at an estimate of damages. A report of damages was filed with the court on August 6th, placing the amount of damages for the planned condemnation at $81,500.00. At that time, the City of O'Fallon began negotiations for the purchase of the land with Schneider's attorney. The parties reached an agreement for the sale of the property at a cost to the City of $81,500.00, the precise amount the condemnation commissioners had submitted as damages. Mr. Schneider delivered a general warranty deed to O'Fallon's City Attorney, Robert Wohler, on September 10, 1985. Two days later, officials from the City of O'Fallon, including Robert Wohler, entered Schneider's Midtown Tavern housed on the property at issue, tendered a check for the agreed amount to Schneider, then proceeded to force Schneider and his patrons from the property. These actions resulted in the City's seizure of numerous items of personal property utilized by Mr. Schneider in the operation of his tavern.

Mr. Schneider filed his first complaint in June of 1988, followed by an amended complaint filed in September of 1989. Schneider alleged the City's actions on September 12, 1985, resulted in a violation of his constitutional rights of due process and equal protection under 42 U.S.C. §§ 1983, 1985, and 1986; invasion of privacy; defamation; tortious interference with his business expectancy; intentional infliction of emotional distress; conversion; trespass to chattels; and violation of his rights under the Missouri Constitution.

In March, 1991, Schneider's lawsuit was settled. MIRMA paid Schneider $25,-000.00, and incurred attorneys' fees totalling $18,746.11 in the defense of Mr. Schneider's lawsuit.

In October of 1991, MIRMA instituted the present action. An amended petition was filed on April 29, 1992, wherein MIRMA alleged that Mark Schneider's claim was not covered by MIRMA's insurance program because of an inverse condemnation exclusion provided in the Agreement between MIRMA and appellants. Additionally, MIRMA denied responsibility because Schneider's petition had alleged intentional misconduct on the part of the city and its representatives. MIRMA contended that intentional acts were also excluded from coverage under the insurance program. Finally, MIRMA claimed appellants had breached the Agreement with MIRMA by failing to make a determination as to whether the Schneider claim was a qualified claim and by failing to make an initial determination of coverage and issue the necessary reservation of rights and/or denial of coverage letters to the insured as was required per the Agreement.

Both parties filed motions for summary judgment and documents in support. In addition, appellants filed a motion to strike the affidavit of David Epps, Executive Director of MIRMA. On July 8, 1992, the trial court sustained MIRMA's motion for summary judgment, denying both appellants' motion for summary judgment and motion to strike Epps' affidavit. Upon the filing of MIRMA's motion to correct the order to include an award of damages, the trial court entered judgment in favor of MIRMA on August 3, 1992, in the amount of $43,746.11. This appeal followed.

We note initially that our review of an entry of summary judgment requires us to view the record in the light most favorable to the party against whom summary judgment was entered. *Meyer v. Enoch,* 807 S.W.2d 156, 158 (Mo.App.E.D. 1991). We must determine whether any genuine issue of material fact exists which would require a trial. *Id.* We will affirm the judgment if it is sustainable as a matter of law under any theory. *Id.*

For the first point, appellants contend the court erred in granting summary judgment for MIRMA. Appellants argue that the inverse condemnation exclusion did not apply to Schneider's suit because Mark Schneider's complaint did not plead claims arising out of or connected with the principles of eminent domain or condemnation. We disagree.

The applicable contract provision states:

## INVERSE CONDEMNATION EXCLUSION CLAUSE

This policy does not cover claims for loss or damage or any liability of any and all the Assureds arising out of or in any way connected with the operation of the principles of eminent domain, condemnation by whatever name called regardless of whether such claims are made directly against the Assured or by virtue of any agreement entered into by or on behalf of the Assured.

Based on our reading of this provision, it is clear the inverse condemnation exclusion applies to the facts before us and precludes appellants' collection of expenses from MIRMA in regard to the Schneider lawsuit. There is no doubt that the actions complained of by Mark Schneider in his original and amended complaints were generated by the City of O'Fallon's instigation of condemnation proceedings relating to Schneider's property. Moreover, it is obvious that if the city had not decided it desired Mr. Schneider's land, the seizure of September 12, 1985, would not have occurred and the resulting lawsuit would have been nonexistent. We read no ambiguity in the Inverse Condemnation Exclusion Clause. It clearly states the policy provided to appellants by MIRMA will not cover any claim or liability "arising out of or in any way connected with" utilization of the powers of condemnation. As summary judgment is appropriate when the contract is clear and unambiguous, we affirm the actions of the court below. *See, Maryland Cas. Co. v. Martinez*, 812 S.W.2d 876, 880 (Mo.App., W.D.1991). Point denied.

For appellants' next point, it is contended summary judgment was entered in error because "personal injury", for which coverage was provided under the agreement between MIRMA and appellants, is defined to include a number of the claims specifically raised by Mark Schneider in his lawsuit. However, the applicable portion of the contract provides:

A. *General Liability*

Underwriters and MIRMA agree, *subject to the limitations, terms and conditions of the policies on file* in the MIRMA office to indemnify the Member for all sums which the Member shall be obligated to pay by reason of liability imposed upon the Member by law or assumed by the Member under contract or agreement, for damages direct or consequential, and expenses ... on account of bodily or personal injuries ... (emphasis added).

Therefore, although the contract does establish coverage for the costs and damages associated with personal injury,[1] the extent of this coverage is restricted by any limitations or special conditions in the policies. The Inverse Condemnation Exclusion Clause is one such limitation. Thus, appellants' argument that the costs incurred in addressing Mark Schneider's claim are covered as personal injuries under the contract is without merit.

In the alternative, appellants suggest there is an ambiguity in the contract which requires a remand. Appellants claim the definition of "personal injury", which includes the consequences of certain intentional torts, and the definition of "occurrence", which limits coverage under the agreement to the consequences of unintentional acts only, create an ambiguity. However, as we find the facts before us to be governed, and appellants' recovery restricted, by the Inverse Condemnation Exclusion Clause, we see no reason to address a potential ambiguity between terms we need not even reach. Point denied.

Appellants' final point asserts error on the part of the trial court for its failure to strike the affidavit of David Epps filed in support of MIRMA's motion for summary judgment. Appellants allege Epps' affidavit consisted almost entirely of legal conclusions rather than facts within his per-

---

1. Personal injury is defined by the agreement as "mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, fasle (sic) eviction, detention, malicious prosecution, discrimination, humiliation, inva- sion of right of privacy, libel, slander or defamation of character, piracy, and any infringement of copyright or property," and, thus, appears to cover some of the very injuries alleged by Mark Schneider in his lawsuit.

sonal knowledge. As a result, argue appellants, the affidavit was insufficient to act as a basis of support for the grant of summary judgment in MIRMA's favor.

■ We remind appellants a court must review more than just the affidavits filed in making a determination as to the grant or denial of a motion for summary judgment. Summary judgment may only be allowed where it is clear from the pleadings, depositions, affidavits, answers to interrogatories and admissions that no genuine issue of material fact exists which would require a trial. Rule 74.04(c); *Cavin v. Kasser*, 820 S.W.2d 647, 649 (Mo.App.E.D.1991). In the present case, the pleadings, the motions and memorandums in support, and the supporting affidavits filed by both parties were all available for the trial court's review. Though we find the affidavit of David Epps to assert facts within his personal knowledge as is required by Rule 74.04(e), we additionally conclude that even without the affidavit of Mr. Epps, the trial court had sufficient documentation before it to support a grant of summary judgment in favor of MIRMA. Point denied.

Based on the foregoing, we affirm the actions of the trial court.

STEPHAN, J., concurs.

SMITH, J., dissents in separate dissenting opinion.

SMITH, Judge, dissenting.

I respectfully dissent.

The suit is brought against defendants for negligence or breach of contract in providing claims management services to plaintiff. Specifically it is premised on allegations that plaintiff's insurance policy providing liability coverage to its insured, the City of O'Fallon, did not provide coverage to the City for intentional tortious conduct alleged by Mark Schneider in his federal law suit against the City of O'Fallon and certain of its officials. Defendants' alleged negligence or breach of contract was in providing a defense for the litigation without at least taking a reservation of rights. The lack of coverage allegedly occurred because of an "inverse condemnation" ex-

ception to the policy and because the policy did not include coverage for intentional tortious acts. The issue, therefore, is whether the allegations of Schneider's petition (either original or amended) set forth a liability of O'Fallon or its officials which was covered by the plaintiff's policy of insurance. In this case the defendants assume the status of the insured for purposes of determining whether coverage is afforded under the policy.

The posture of the case outlined above implicates certain well established principles not set out in the majority opinion. The burden is on the insurer to prove that an exception to coverage applies. *Walters v. State Farm Mutual Automobile Insurance Company*, 793 S.W.2d 217 (Mo.App. 1990) [1, 2]. Exclusion clauses are strictly construed against the insurer. *Id.; Shelter Mutual Insurance Co. v. Haller*, 793 S.W.2d 391 (Mo.App.1990) [3]. Any ambiguities are resolved against the insurer. *Maxon v. Farmers Insurance Company, Inc.*, 791 S.W.2d 437 (Mo.App.1990) [1]. The policy will be interpreted in the light most favorable to the insured. *Id.*

The inverse condemnation exclusion clause, set forth in full in the majority opinion, excludes claims "arising out of or in any way connected with the operation of the *principles* of eminent domain". (emphasis supplied). Without identifying what "principle" of eminent domain is implicated in the tortious taking of *personal* property, the majority concludes that had the city not filed the condemnation action the subsequent tortious conduct would not have occurred. The same could of course be said if the official delivering the compensation check had negligently operated his motor vehicle while making the delivery and injured some third party. There is not to my knowledge any "principle" of eminent domain which authorizes a city official to seize the *personal property* of a citizen whose *land* has been condemned and thereafter refuse to return it. That conduct is what is alleged in Schneider's complaint. That the complaint also alleges that the underlying reason for the tortious conduct was the city officials' ire over Schneider's

pursuit of his rights under the condemnation laws does not convert the acts to ones "connected with the operation of the principles of eminent domain." Had an official with similar ire assaulted and battered Schneider it borders on the frivolous to say that such conduct was "connected with the operation of the principles of eminent domain." I am unable to conclude that the condemnation exception does unambiguously except from coverage intentional or negligent tortious acts of city officials which occur while they are engaged in a condemnation proceeding.[1]

Plaintiff also premises the absence of liability upon the definition of "occurrence" which is:

4. *Occurrence*

The term "occurrence" wherever used herein, means an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in bodily injury, personal injury, or damage to property during the period of membership.

The policy provides for coverage for any bodily or personal injuries or property damage arising out of any occurrence.

Personal injury is defined as:

1. *Personal injury:*

The term "personal injury" wherever used herein, shall mean mental injury, mental anguish, shock, sickness, disease, disability, *false arrest, false imprisonment, fasle* (sic) *eviction, detention, malicious prosecution, discrimination, humiliation, invasion of right of privacy, libel, slander* or *defamation of character, piracy* and any *infringement of* copyright or *property.* (Emphasis supplied)

All of the emphasized torts are intentional torts. Reading the coverage, personal injury definition, and the occurrence definition together the policy provides coverage for unintentional intentional torts. Faced

with similar oxymoronic coverage, courts in other jurisdictions have found coverage because of the "complete nonsense" of such provisions. *Lincoln National Health and Casualty Insurance Company v. Brown,* 782 F.Supp. 110 (M.D.Ga.1992); *Liberty Life Insurance Company v. Commercial Union Insurance Company,* 857 F.2d 945 (4th Cir.1988) [4]. Our Supreme Court has held that where "a contract promises something at one point and takes it away at another there is an ambiguity." *Behr v. Blue Cross Hospital Service, Inc.,* 715 S.W.2d 251 (Mo. banc 1986) [5]. Schneider's amended complaint was in eight counts. It alleged wrongful seizure of personal property, retaliatory discrimination, violation of right of privacy, false light invasion of privacy, intentional causation of emotional distress, conversion, trespass to chattels, and deprivation of property without due process. Whatever the viability of these allegations at least some were covered by the definitions of "personal injury" in the policy.[2]

It is clear to me that the plaintiff's policy provided coverage to O'Fallon against Schneider's lawsuit. At a minimum there were issues of fact to be resolved. Summary judgment should not have been granted to plaintiff. I would reverse and remand.

---

**1.** In this case the improper conduct did not occur until after the condemnation was completed by delivery of a deed by Schneider and delivery of a check by the city.

**2.** If there is not coverage because of the definition of "occurrence" it is clear that much of what the insured believed it was getting is illusory. It would appear doubtful that municipal officials could properly spend taxpayers money for coverage as questionable as plaintiff asserts its coverage is.