**COUNTY OF SCOTLAND, Missouri, Respondent,**

v.

**MISSOURI PUBLIC ENTITY RISK MANAGEMENT FUND, Appellant.**

**WD 80518**

Missouri Court of Appeals, Western District.

OPINION FILED: October 17, 2017

CORRECTED October 23, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied November 16, 2017

Application for Transfer Denied January 23, 2018

Scott L. Templeton, Kirksville, MO, for respondent.

Michael G. Berry, Jefferson City, MO, for appellant.

Before Division One: Mark D. Pfeiffer, Chief Judge, Presiding, James E. Welsh, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Missouri Public Entity Risk Management Fund ("MOPERM") appeals from the grant of summary judgment entered in favor of the County of Scotland, Missouri ("Scotland") and against MOPERM. MOPERM argues that the trial court erred in entering judgment in favor of Scotland and against MOPERM because two insurance policy exclusions negated MOPERM's duties to defend and indemnify Scotland. MOPERM also contends that the trial court erred in entering judgment in favor of Scotland because the underlying judgment against Scotland, and for which indemnity was sought, was unenforceable. We reverse and vacate the trial court's judgment, and enter judgment in favor of MOPERM.

### Factual and Procedural Background [1]

Scotland is a legal subdivision of the State of Missouri pursuant to article VI, section 1 of the Missouri Constitution. MOPERM is a public corporate body created pursuant to section 537.700.[2] MOPERM provides liability coverage to local governments and their officers and employees when engaged in official duties. *Mo. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co. of Reading*, 399 S.W.3d 68, 71 (Mo. App. W.D. 2013).

In exchange for premium payments, MOPERM provided liability coverage to Scotland as set forth in a Memorandum of Coverage ("Memorandum"). Under the Memorandum, MOPERM agreed to defend and indemnify Scotland, its officials, and its employees, subject to limitations and exceptions explained in the Memorandum. Section IV.K of the Memorandum provides that coverage does not apply:

> To claims for loss or damage arising out of or in connection with the principles of eminent domain, proceedings to condemn property or inverse condemnation by whatever name ...; or any action, proceeding or challenge by whatever name to enforce or invalidate, modify or

---

1. The factual and procedural background is drawn largely from the parties' stipulated facts submitted to the trial court.

2. All statutory references are to RSMo 2016 as supplemented unless otherwise specified.

change any zoning ordinance or land use plan.

Additionally, Section IV.R states that coverage does not apply "[t]o injunctive relief or relief other than monetary damages."

In August 2011, Gavin Hauk ("Hauk") applied to the Scotland County Commission ("Commission") for a county health permit to construct and operate a concentrated animal feeding operation ("CAFO"). The Commission denied Hauk's permit application because it did not meet the required distance set forth in a setback provision of the applicable ordinance, which stated "No CAFO shall be located within two miles of a populated area." [3]

On April 18, 2012, while the Memorandum was in full force and effect, Hauk filed a two-count petition ("Hauk Petition") against the Commission and its commissioners in their official capacities [4] asserting that the Commission's decision to deny his permit was unconstitutional, unlawful, unreasonable, arbitrary, capricious and involved an abuse of discretion. In Count I, the Hauk Petition sought judicial review pursuant to section 536.150, and alleged that the denial of Hauk's permit deprived him of his right to establish a CAFO on his property. The Hauk Petition asserted that as a result of the denial of his permit, Hauk was unable to establish a CAFO on his property and suffered immediate and irreparable injury, loss, or damage. Count I of the Hauk Petition sought declaratory and injunctive relief, and an award of costs. In Count II, the Hauk Petition alleged that the ordinance, as applied to Hauk, violated his due process and equal protection rights, and "constitute[d] an unconstitutional regulatory taking of his property." Pursuant to 42 U.S.C. section 1983, Count II of the Hauk Petition sought to enforce the rights guaranteed to Hauk under the Fifth and Fourteenth Amendments of the United States Constitution. The Hauk Petition alleged that the ordinance, as applied by the Commission, "constitute[d] an unlawful and improper denial of property rights without just compensation within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution." The Hauk Petition claimed that as a result of the Commission's denial of his permit, Hauk was "deprived of his constitutionally protected First, Fifth, and Fourteenth Amendments rights and ha[d] been damaged in an amount in excess of $25,000.00, plus attorneys' fees and costs." The Hauk Petition sought compensation in Count II for Hauk's costs, attorneys' fees, and actual damages sustained.

Scotland notified MOPERM of Hauk's lawsuit. MOPERM refused to provide the Commission and the individual commissioners a defense, and denied coverage for the claims asserted in the Hauk Petition, citing the exclusions set forth in Sections IV.K and IV.R of the Memorandum.

Following a bench trial in the Hauk lawsuit, a judgment, styled as "Judgment on Count I," was entered against the Commission, finding the Commission's denial of Hauk's permit to be unconstitutional, unreasonable, arbitrary, capricious, and an

---

3. The ordinance defined "populated area" as "[a]n area having at least 10 occupied dwellings not on CAFO property, as measured in a straight line from the occupied dwelling to the nearest CAFO confinement building, confinement lot, or other confinement area, or water handling facility."

4. A suit against the commissioners in their official capacities is considered a suit against Scotland. *See Wirken v. Miller,* 978 S.W.2d 60, 62 (Mo. App. W.D. 1998) (citing *Edwards v. McNeill,* 894 S.W.2d 678, 682 (Mo. App. W.D. 1995)).

abuse of discretion ("Hauk Judgment").[5] The Hauk Judgment ordered the issuance of a permit to Hauk for his proposed CAFO. Though Count I of the Hauk Petition had not sought monetary relief, the Hauk Judgment nonetheless awarded Hauk $178,566.00 for damages sustained as a direct result of the Commission's unlawful denial of his permit application.[6] The Hauk Judgment was affirmed on appeal.[7] Scotland incurred legal expenses in defending the Hauk lawsuit in the amount of $102,427.95.

Scotland filed the present cause of action against MOPERM for breach of contract on July 31, 2015. MOPERM denied that it was obligated under the Memorandum to defend or indemnify the Commission or the individual commissioners, and cited the above referenced exclusions as affirmative defenses. Subsequently, the parties filed a joint stipulation of facts and competing motions for summary judgment. Relevant to this appeal, the parties' competing motions for summary judgment contested whether MOPERM's duties to defend and indemnify were excluded by Sections IV.K and IV.R.

The trial court entered an amended judgment ("Judgment") granting Scotland's motion for summary judgment and

denying MOPERM's motion for summary judgment. The Judgment awarded Scotland $294,545.95 plus interest at the statutory rate.[8] The trial court found as a matter of law that the Hauk lawsuit "was not for inverse condemnation nor was it a challenge to [Scotland's] land use plan." The trial court concluded that "[a]t best [the Hauk lawsuit] was a challenge to the constitutional propriety of the actions of the individual commissioners in implementing the land use plan." The trial court thus found Hauk's Petition insufficient to invoke a policy exclusion.

This timely appeal followed.

## Standard of Review

Appellate review of the grant of summary judgment is *de novo*. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010). "In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). "Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Id.* "A defending party ... may establish a right to summary judg-

---

5. Following the bench trial, Hauk dismissed Count II of the Hauk Petition.

6. MOPERM argues in its third point on appeal that the trial court had no authority to award monetary damages on Count I of the Hauk Petition, which sought judicial review pursuant to section 536.150. Because we otherwise resolve this appeal based on our resolution of MOPERM's second point on appeal, we need not address MOPERM's contention. We note, however, that MOPERM acknowledged during oral argument that it could not locate any authority prohibiting a trial court from awarding monetary damages when conducting section 536.150 judicial review of a non-contested action.

7. *Hauk v. Scotland Cty. Comm'n*, 429 S.W.3d 459 (Mo. App. E.D. 2014). Though Hauk dismissed Count II of the his petition, and though monetary relief had not been sought pursuant to Count I of the Hauk Petition, Scotland did not appeal the award of monetary damages to Hauk, a curious omission noted by the Eastern District. *Id.* at 460 n.3.

8. The trial court's original judgment only awarded Scotland $192,118.00 (the amount Scotland paid to satisfy the judgment in Hauk's case), and did not account for the $102,427.95 in reasonable legal expenses. The amended judgment reflects the sum of these two numbers.

ment by demonstrating . . . . 'that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense.' " *Id.* at 453 (quoting *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo banc 1993)).

■ Here, the Judgment was based on stipulated facts. "Because the case was submitted on stipulated facts . . . 'the only question before his court is whether the trial court drew the proper legal conclusions from the facts stipulated.' " *Archey v. Carnahan*, 373 S.W.3d 528, 531 (Mo. App. W.D. 2012) (quoting *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979) (other citations omitted)). The legal conclusions drawn from the stipulated facts in this case involve the interpretation of an insurance policy. "The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews *de novo.*" *Burns*, 303 S.W.3d at 509.

### Analysis

MOPERM raises three points on appeal. In Point I, MOPERM claims that the trial court erred in granting summary judgment for Scotland and against MOPERM because the exclusions in Sections IV.K and IV.R negated any duty to indemnify Scotland for the Hauk Judgment. In Point II, MOPERM argues that the same exclusions negated any duty to defend Scotland in the Hauk lawsuit. In Point III, MOPERM contends that the trial court erred in granting summary judgment against MOPERM because the court in the Hauk Judgment lacked authority to enter a monetary judgment against Scotland. Because the duty to defend is broader than the duty to indemnify, our analysis will begin with Point II. *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 188 (Mo. App.

W.D. 2012) (citing *Penn-Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 596 (Mo. App. W.D. 2010)).

### Point II

MOPERM's second point on appeal asserts that the exclusions in Sections IV.K and IV.R applied to negate MOPERM's duty to defend Scotland in the Hauk lawsuit, rendering the grant of Scotland's motion for summary judgment erroneous as a matter of law. MOPERM argues that Section IV.K applied to exclude coverage because the exclusion was unambiguous and because all of the claims in the Hauk Petition arose from the Commission's denial of Hauk's CAFO permit, and were thus in the nature of inverse condemnation claims, such that there was no possibility of coverage. As to Section IV.R, MOPERM maintains that this exclusion barred coverage as to Count I of the Hauk Petition because Count I did not seek monetary damages other than costs. Because we find that Section IV.K relieved MOPERM of its duty to defend the Hauk Petition, we need not address the exclusion set forth in Section IV.R of the Memorandum.

■ The duty to defend is determined "(1) 'initially by comparing the relevant policy provisions with the allegations of liability in the petition,' and then (2) by considering facts the insurer 'knew or could reasonably have ascertained' at the time the action is commenced." *Fischer*, 388 S.W.3d at 189 (quoting *Penn-Star*, 306 S.W.3d at 597). "To be relieved of this duty, the insurer must demonstrate that there is no possibility of coverage." *City of Lee's Summit v. Mo. Pub. Entity Risk Mgmt.*, 390 S.W.3d 214, 219 (Mo. App. W.D. 2012). "An insurer does not have a duty to defend where the underlying claim is outside the coverage of the insurance policy." *Id.* "MOPERM, the insurer, bears the burden of proving the applicability of

any coverage exclusion." *Id.* "Exclusions are necessary provisions in insurance policies and are enforceable if they are clear and unambiguous." *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015).

On appeal, MOPERM does not dispute that the Hauk Petition and the Hauk Judgment would fall within the coverage provisions of the Memorandum were it not for the exclusions at issue. However, MOPERM argues that Section IV.K relieves it of the duty to defend because by its plain terms, there is no possibility of coverage. As noted, Section IV.K provides that coverage does not extend to "claims for loss or damage arising out of or in connection with the principles of eminent domain, proceedings to condemn property or inverse condemnation by whatever name." MOPERM contends that all of Hauk's claims arose out of Scotland's alleged regulatory taking of his property, a recognized example of an inverse condemnation claim.

■ In response, Scotland argues that Section IV.K is ambiguous and should be resolved against MOPERM to allow coverage because "inverse condemnation" is not defined. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Burns*, 303 S.W.3d at 509 (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). "[T]he failure of a policy to define a term does not, in and of itself, render it ambiguous." *Fischer*, 388 S.W.3d at 187 (quoting *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 40 (Mo. App. E.D. 2007)). "When a policy does not define a term, a court is free to give the term a reasonable construction." *Id.* (quoting *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 557 (Mo. App. W.D. 2008)).

■ In determining whether an insurance policy is ambiguous, this court "must consider the whole document and the natural and ordinary meaning of the language." *Id.* (quoting *Maritz Holdings, Inc. v. Fed. Ins. Co.*, 298 S.W.3d 92, 99 (Mo. App. E.D. 2009)). "Language is ambiguous if it is reasonably open to different constructions." *Burns*, 303 S.W.3d at 509 (quoting *Seeck*, 212 S.W.3d at 132). The appellate court "will not create an ambiguity where one does not exist." *Fischer*, 388 S.W.3d at 188.

Though the Memorandum does not define "inverse condemnation," we find that the term is not ambiguous. The term is not reasonably open to different constructions, as its ordinary meaning is settled by case law from Missouri courts and the United States Supreme Court.

■ Under the Missouri Constitution, "private property shall not be taken or damaged for public use without just compensation." Mo. Const. art. I, section 26. Furthermore, under the federal constitution, "[t]he Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.' " *Murr v. Wisconsin*, ── U.S. ──, 137 S.Ct. 1933, 1942, 198 L.Ed.2d 497 (2017) (quoting U.S. Const. amend. V). "When a taking occurs, the owner is entitled to be put in as good a position pecuniarily as if his property had not been taken." *Clay Cty. Realty Co. v. City of Gladstone*, 254 S.W.3d 859, 863 (Mo. banc 2008) (quoting *Akers v. City of Oak Grove*, 246 S.W.3d 916, 919 (Mo. banc 2008)).

■ Though property can be taken by eminent domain, thus triggering the obligation of just compensation, the State and Federal constitutional protections against takings without just compensation are not limited to this formal action. "Inverse condemnation is a cause of action against a governmental agency to recover

the value of the property taken by the agency, though no formal exercise of the power of eminent domain has been completed." *Dulany v. Mo. Pac. R.R. Co.*, 766 S.W.2d 645, 648 (Mo. App. W.D. 1988); *see also Condemnation, Black's Law Dictionary* (10th ed. 2014) (defining "inverse condemnation" as "[a]n action brought by a property owner for compensation from a governmental entity that has taken the owner's property without bringing formal condemnation proceedings"). "Inverse condemnation is 'a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.'" *Agins v. City of Tiburon*, 447 U.S. 255, 258 n.2, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (quoting *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980)), *abrogated on other grounds by Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). "[T]he entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty.*, 482 U.S. 304, 316, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

Inverse condemnation may be established "where an invasion or appropriation of a valuable property right that caused an injury can be shown." *Clay Cty. Realty Co.*, 254 S.W.3d at 864. "The state constitutional provisions barring the taking of private property apply 'equally to the enjoyment and the possession of lands.'" *Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 329 (Mo. banc 2015) (quoting *Hoffmann v. Kinealy*, 389 S.W.2d 745, 753 (Mo. banc 1965)). Consequently, "a taking can occur when there is an arbitrary interference by the government, or by its authority, with the reasonable enjoyment of

private lands." *Id.* at 329 n.7 (citing *Hoffmann*, 389 S.W.2d at 753). Thus, the ordinary and natural meaning of "inverse condemnation" is a cause of action to seek just compensation for a governmental taking of property through arbitrary or unreasonable interference with property rights.

A regulatory taking—that is, the enforcement of an excessive land use regulation, or the arbitrary application of a land use regulation—constitutes an example of arbitrary or unreasonably interference with property rights. The U.S. Supreme Court so recognized in *Pennsylvania Coal Co. v. Mahon*, which declared that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *accord Murr*, 137 S.Ct. at 1942. In *Palazzolo v. Rhode Island*, the U.S. Supreme Court recognized that the Fifth Amendment's Takings Clause "allows a landowner to assert that a particular exercise of the State's regulatory power is so unreasonable or onerous as to compel compensation." 533 U.S. 606, 627, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001); *see also Murr*, 137 S.Ct. at 1942 (holding that a regulation "can be so burdensome as to become a taking"). *Palazzolo* delineated how a claim for a regulatory taking stems from the Takings Clause of the Fifth Amendment. *Id.* at 617-18, 121 S.Ct. 2448; *see also Murr*, 137 S.Ct. at 1942-43 (delineating the same); *Lingle*, 544 U.S. at 539, 125 S.Ct. 2074 (holding that inquiries in regulatory takings jurisprudence "aim[ ] to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain"). In *Palazzolo*, the U.S. Supreme Court held that a petitioner's claim sounded in inverse condemnation when the petitioner "assert[ed] that the State's wetlands regulations, as applied by the [Rhode Is-

land Coastal Resources Management] Council to his parcel, had taken the property without compensation in violation of the Fifth and Fourteenth Amendments." *Id.* at 615, 121 S.Ct. 2448; *see also First English*, 482 U.S. at 315, 107 S.Ct. 2378 (holding that "it has long been established ... that claims for just compensation are grounded in the Constitution itself").

The Missouri Supreme Court has similarly recognized that "[a] regulatory taking occurs when government regulation does not result in a physical invasion of property or the denial of all economically viable use but, instead, 'goes too far' in restricting the exercise of property rights." *Labrayere*, 458 S.W.3d at 329 n.6. "The imposition of an invalid regulation can, under certain circumstances, constitute a regulatory taking." *Clay Cty. ex rel. Cty. Comm'n of Clay Cty. v. Harley and Susie Bogue, Inc.*, 988 S.W.2d 102, 106 (Mo. App. W.D. 1999); *accord St. Charles Cty. v. St. Charles Sign & Elec., Inc.*, 237 S.W.3d 272, 277 (Mo. App. E.D. 2007); *Glenn v. City of Grant City*, 69 S.W.3d 126, 130 (Mo. App. W.D. 2002); *see also Taking, Black's Law Dictionary* (10th ed. 2014) (defining "regulatory taking" as "[a] taking of property under the Fifth Amendment by way of regulation that seriously restricts a property owner's rights.").

■ Thus, the ordinary and natural meaning of "inverse condemnation" includes claims based on regulatory takings resulting from the unreasonable or arbitrary enforcement of land use regulations. Section IV.K excludes from coverage claims arising out of or in connection with "inverse condemnation by whatever name." Given the ordinary and natural meaning of the phrase "inverse condemnation," Section IV.K unambiguously excludes coverage for claims seeking compensation or other relief arising out of the interference with property rights by virtue of the alleged unreasonable or arbitrary enforcement of land use regulations.

■ Afforded this unambiguous meaning, Section IV.K of the Memorandum plainly excluded any possibility of coverage for the claims asserted in the Hauk Petition. Both Counts of the Hauk Petition sought compensation or other relief based on the Commission's decision to deny Hauk's CAFO permit. The Hauk Petition claimed that denial of the CAFO permit was an unreasonable deprivation of Hauk's property rights, particularly his ability to use his property for a CAFO. The Hauk Petition argued that Hauk suffered loss and damage as a result of the Commission's arbitrary and unreasonable interference with his ability to establish a CAFO on his property. Count II expressly alleged, in fact, that the Commission's application of the ordinance to Hauk's permit application constituted "an unconstitutional regulatory taking of [Hauk's] property." And the Hauk Petition asserted that the ordinance, as applied by the Commission, constituted a denial of Hauk's property rights "without just compensation within the meaning of the Fifth and Fourteenth Amendments." The entirety of the Hauk Petition arises out of, and is connected to, the essential claim that the Commission's exercise of its regulatory power, as applied to Hauk, was so unreasonable and arbitrary that it compelled compensation under the Takings Clause of the Fifth Amendment. *See Palazzolo*, 533 U.S. at 627, 121 S.Ct. 2448. Thus, there was no possibility of coverage for any claim in the Hauk Petition, leaving MOPERM with no duty to defend the Hauk Petition.

Undeterred, Scotland argues that the Hauk Petition asserted claims that were independent of a claim for inverse condemnation. Scotland focuses on the allegation in Count I of the Hauk Petition that the Commission violated Hauk's equal pro-

tection rights because it approved CAFO permits for similarly-situated applicants. Scotland argues that this broad equal protection violation was the ultimate basis for the Hauk Judgment, and contends, as the Judgment held, that the Hauk lawsuit was not an inverse condemnation action, but was "[a]t best ... a challenge to the constitutional propriety of the actions of the individual commissioners in implementing the land use plan."

■ Scotland's argument, and the Judgment's conclusion in this regard, are without merit. The individual commissioners were named in their official capacity, and their actions in implementing Scotland's land use plan had no legal import supporting a right of recovery independent of the effect of those actions—the denial of Hauk's CAFO permit.[9] Hauk's allegation that the Commission treated him differently from other applicants is legally inseparable from the regulatory taking that resulted, the essential quality of Hauk's claims as pled.[10] The Hauk Petition alleged that the health permit ordinance, *as applied by the Commission* (and thus by the individual commissioners), "constitute[d] an unlawful and improper denial of property rights without just compensation within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution." Plainly, the Hauk Petition alleged a regulatory taking, and thus inverse condemnation within the scope of the Section

IV.K exclusion, because Hauk believed his permit application was unfairly denied.

An analogous result was reached in *Missouri Intergovernmental Risk Management Ass'n v. Gallagher Bassett Services*, 854 S.W.2d 565 (Mo. App. E.D. 1993). In that case, Missouri Intergovernmental Risk Management Association ("MIRMA") sought to recover from a hired plan administer the amounts paid to defend and resolve a claim against the City of O'Fallon, one of MIRMA's insureds. *Id.* at 567. MIRMA claimed the plan administrator erroneously failed to deny defense and/or to assume defense under a reservation of rights when the City of O'Fallon sought coverage for claims asserted against it by an individual whose personal property had been removed from a building the City of O'Fallon had lawfully condemned. In that suit, the individual asserted that the City of O'Fallon's removal of his personal property from the condemned building "resulted in a violation of his constitutional rights of due process and equal protection under 42 U.S.C. sections 1983, 1985, and 1986; invasion of privacy; defamation; tortious interference with his business expectancy; intentional infliction of emotional distress; conversion; trespass to chattels; and violation of his rights under the Missouri Constitution." *Id.* Our Eastern District concluded that summary judgment was properly granted in favor of MIRMA against the plan administrator

9. In fact, Scotland cites no authority recognizing a cause of action against individual commissioners acting in their official capacity based on an alleged equal protection violation that is independent of a claim sounding in inverse condemnation. "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *Kimble v. Div. of Emp't Sec.*, 388 S.W.3d 634, 641 (Mo. App. W.D. 2013) (quoting *Al-Hawarey v. Al-Hawarey*, 388 S.W.3d 237, 246 (Mo. App. E.D. 2012)).

10. In any event, the Missouri Court of Appeals for the Eastern District held on appeal that while the evidence supported the Hauk Judgment's conclusion that the Commission's decision was arbitrary, the court did "not believe there was evidence in the record to show any discriminatory treatment of Hauk compared to other health permit applicants." *Hauk*, 429 S.W.3d at 463 n.8.

because all of the claims asserted against the City of O'Fallon fell within the scope of the inverse condemnation exclusion of the City of O'Fallon's policy. *Id.* at 568. As the Eastern District observed:

> There is no doubt that the actions complained of by [the individual] in his original and amended complaints were generated by the City of O'Fallon's instigation of condemnation proceedings relating to [said claimant's] property.... [I]t is obvious that if the city had not decided it desired [the claimant's] land, the seizure of [claimant's personal property] would not have occurred and the resulting lawsuit would have been nonexistent. We read no ambiguity in the Inverse Condemnation Clause.

*Id.* The instant case is indistinguishable. But for the Commission's denial of a health permit which Hauk required to use his land for a CAFO, Hauk's resulting lawsuit would have been nonexistent. By whatever name or theory, all relief sought in the Hauk Petition was inherently grounded in his claim that the Commission unreasonably deprived him of the right to reasonably use private property.

The exclusion to coverage set forth in Section IV.K is unambiguous and must be enforced as written. *See Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 554 (Mo. banc 2014). The legal theories asserted in the Hauk Petition were each dependent for their success on Hauk's ability to prove that the Commission's denial of his CAFO permit had an unconstitutional impact on Hauk's ability to use his property as desired. The legal theories alleged in the Hauk Petition thus each involved a claim of "inverse condemnation by whatever name." Although the duty to defend applies "even if [a] petition contains ... claims that would not be covered," *Penn-Star*, 306 S.W.3d at 597, here all claims alleged in the Hauk Petition were excluded from coverage under Section IV.K of the Memorandum, and there was no possibility of coverage. MOPERM had no duty to defend the Hauk lawsuit.

Point II is granted.

## Point I

Having found that MOPERM had no duty to defend the Hauk Petition, it is axiomatic that MOPERM had no duty to indemnify Scotland for the Hauk Judgment, the subject of Point I on appeal. "[W]here there is no duty to defend, there is no duty to indemnify." *Fischer*, 388 S.W.3d at 188 (quoting *Trainwreck W.*, 235 S.W.3d at 44).

Point I is granted.

## Point III

Because MOPERM had no duty to defend or indemnify Scotland, we need not address Point III on appeal which challenges the lawfulness of the Hauk Judgment.

Point III is denied as moot.

## Conclusion

The trial court's amended judgment against MOPERM and in favor of Scotland is reversed and vacated. Competing, mirror-image motions for summary judgment based on stipulated facts were filed by the parties below. No purpose would be served in remanding this matter to the trial court with instructions to enter judgment in favor of MOPERM when we are positioned and encouraged to effect the same result. *See* Rule 84.14. Judgment is hereby entered in favor of MOPERM and against Scotland for all relief prayed in Scotland's petition. Costs are awarded to MOPERM.

All concur