

# In the Missouri Court of Appeals
# Eastern District

## NORTHERN DIVISION

| | | |
|---|---|---|
| GAVIN HAUK, | ) | No. ED99724 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| vs. | ) | of Scotland County |
| | ) | |
| SCOTLAND COUNTY COMMISSION | ) | |
| AND ITS COMMISSIONERS: | ) | Hon. Jack N. Peace |
| CHARLES HARRIS, JR., DAVID | ) | |
| WIGGINS AND DANETTE CLATT | ) | |
| IN THEIR OFFICIAL CAPACITIES, | ) | |
| | ) | |
| Appellants. | ) | Filed:  February 25, 2014 |

The Scotland County Commission and Commissioners Charles Harris, Jr., David Wiggins, and Danette Clatt, in their official capacity (collectively "Scotland County") appeal the judgment of the trial court in favor of Gavin Hauk on his petition for judicial review of Scotland County's denial of Hauk's application for a county health permit.  We affirm.

## I.     BACKGROUND

In August 2009, Scotland County adopted Ordinance Number 09-01 ("the Ordinance"), which regulates the construction and operation of concentrated animal feeding operations ("CAFO").  The Ordinance requires individuals seeking to operate a CAFO to obtain a health permit from Scotland County.  The Ordinance contains

guidelines for the setback of the CAFO from a populated area, specifically stating that "[n]o CAFO shall be located within two miles of a populated area." "Populated area" is defined in the Ordinance as "[a]n area having at least 10 occupied dwellings not on CAFO property, as measured in a straight line from the occupied dwelling to the nearest CAFO confinement building, confinement lot, or other confinement area."

Hauk applied for a county health permit to operate a CAFO in August 2011. His application was denied. Scotland County denied Hauk's permit application because his proposed CAFO did not meet the setback requirements of the Ordinance, specifically the provision requiring a two-mile distance between the CAFO and a populated area.[1] Hauk filed a petition for judicial review, pursuant to Section 536.450 RSMo (2000).[2] Following trial, the court entered judgment in favor of Hauk, finding Scotland County's denial of a county health permit was arbitrary, capricious, and an abuse of discretion. Specifically, the court concluded that the commissioners "each applied their self-determined, unwritten standard" to make the determinations regarding the setback provision.

In addition, the court found the setback provision, as applied to Hauk, violated his right to equal protection. The court found, "[b]y denying Hauk's Application, the Commission applied the 2009 Ordinance using their own self-determined, unwritten standard resulting in Hauk's Application being denied, and the others being granted, without legitimate or rational reason for the discriminatory and disparate treatment." The

---

[1] We note that Danette Clatt, Hauk's aunt, abstained from voting on his permit application.
[2] All further statutory references are to RSMo (2000).

trial court ordered Scotland County to issue a health permit to Hauk for his proposed

CAFO.[3] Scotland County now appeals.

## II.    DISCUSSION

### A.    Subject Matter Jurisdiction

As a threshold matter, we must first address Scotland County's third point on

appeal.  In its point, Scotland County claims the trial court erred in failing to dismiss

Hauk's petition for judicial review because Hauk did not exhaust his administrative

remedies by seeking a variance.  Thus, Scotland County claims the trial court did not

have subject matter jurisdiction over Hauk's claims.[4]  We disagree.

As Hauk points out, his petition was filed pursuant to Section 536.150, which

governs non-contested cases.  The statute provides a decision in a non-contested case is

subject to judicial review if the decision affects "the legal rights, duties or privileges of

any person . . . ."  Section 536.150.1.  However, the statute does not have a requirement

that the party seeking judicial review exhaust all administrative remedies.  *Strozewski v.

City of Springfield*, 875 S.W.2d 905, 907 (Mo. banc 1994).  Instead, Section 536.150.3

states, in relevant part, that nothing in the statute should be construed to "limit the

jurisdiction of any court or the scope of any remedy available in the absence of this

section."  As a result, the exhaustion of administrative remedies is not a prerequisite in

---

[3] The court also ordered Scotland County to pay Hauk $178,566 in damages.  Scotland County does not challenge the damages award on appeal.

[4] We note that in *Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), the Missouri Supreme Court cautioned against the use of the phrase "subject matter jurisdiction."  The Court noted that subject matter jurisdiction is the court's authority to render judgment in a particular category of case.  *Id*. at 254.  Pursuant to Article V, Section 14 of the Missouri Constitution, the circuit courts have subject matter jurisdiction over all civil and criminal matters.  *Id*. at 253.  Therefore, the trial court had subject matter jurisdiction in this case.  *Id*.  However, such subject matter jurisdiction does not enlarge the trial court's authority as limited by statute or rule.  *Id*. at 254.  Thus, we consider Hauk's argument on appeal as a challenge to the trial court's "authority" to enter its judgment.

non-contested cases.[5] *Strozewski*, 875 S.W.2d at 907. Therefore, the trial court did not err in refusing to dismiss Hauk's petition.

**B.      Standard of Review**

Judicial review of a non-contested case, such as the instant case, is governed by Section 536.150. *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 508 (Mo. banc 2009) (internal citation omitted). In a non-contested case, the trial court reviews the evidence *de novo*, and determines whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion. *Id.* The trial court does not give deference to the facts found by the agency and does not resolve conflicts in the evidence in the light most favorable to the agency's decision. *Id.*

The judgment entered by the trial court following its review of a non-contested case under Section 536.150 is essentially the same as the judgments in other court-tried cases. *Citizens for Safe Waste Management v. St. Louis County*, 810 S.W.2d 635, 641 (Mo. App. E.D. 1991). Therefore, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We review the trial court's judgment, not the agency's decision. *Id.* We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We defer to the trial court's assessment of the witnesses and their credibility. *Id.*

---

[5] Regardless, we note there is testimony in the record that reflects that Hauk did request a variance and such request was considered and denied by Scotland County.

4

**C.    Trial Court's Decision that Denial was Arbitrary, Capricious, and Abuse of Discretion**

In its first point on appeal, Scotland County argues the trial court erred in holding its denial of a health permit to Hauk was arbitrary, capricious, and an abuse of discretion. Scotland County argues it did not act arbitrarily or capriciously in denying Hauk's application because the decision was based upon substantial evidence. In addition, Scotland County argues the trial court failed to give sufficient deference to Scotland County's decision.[6] Scotland County's claims are without merit.

As previously noted, the Ordinance provides for a two-mile setback of the CAFO from a populated area. "Populated area" is defined in the Ordinance as "[a]n area having at least 10 occupied dwellings not on CAFO property, as measured in a straight line from the occupied dwelling to the nearest CAFO confinement building, confinement lot, or other confinement area." Although the issue was not determined by the trial court, Scotland County correctly notes the Ordinance was a valid exercise of its power to protect the health and welfare of its citizens.[7] *See Borron v. Farrenkopf*, 5 S.W.3d 618 (Mo. App. W.D. 1999) (county ordinance regulating CAFOs, including setback provision, was valid exercise of county's powers). Nevertheless, Scotland County must apply this valid Ordinance in a consistent, rational manner, and it did not do so here.

---

[6] As discussed above, in a non-contested case, the trial court reviews the decision of an administrative agency, such as Scotland County, *de novo*. *City of Valley Park*, 273 S.W.3d at 508. The trial court is not required to give any deference to the agency's decision. *Id*.

[7] The Missouri Association of Counties also addressed the issue in its brief of amicus curiae, noting the court in *Borron* held a similar ordinance was rationally related to health issues potentially stemming from livestock facilities, and therefore was authorized under Section 193.200. 5 S.W.3d at 622. In its brief of amicus curiae, the Missouri Farmers Care argues the Ordinance conflicts with State laws allowing CAFOs, and therefore the Ordinance is void. As discussed in *Borron*, the Ordinance merely requires CAFOs to comply with additional regulation, and does not conflict with Sections 640.700, et seq., which establish the operation of CAFOs as a lawful enterprise in the State of Missouri.

At trial, Commissioner Paul Campbell testified regarding his evaluation of Hauk's health permit application. Commissioner Campbell acknowledged that he believed if the setback provisions of the Ordinance were enforced as written to include residential dwellings within the entire two-mile radius surrounding the property in considering whether a "populated area" existed, there would not be any CAFOs in Scotland County. Commissioner Campbell testified this was not Scotland County's intent, and therefore, he attempted to find a balance between the health concerns of the residents and the operation of CAFOs within the county. According to Commissioner Campbell, whether a populated area existed, precluding the grant of a health permit had not been an issue with previous applications. Commissioner Campbell testified he initially believed Hauk would be granted a health permit. However, the night before the commission voted, Commissioner Campbell testified he drove to the area. He stated that when "you get to looking at it like that, it's a populated area because you have several homes that are fairly close together." Based on that fact, he "decided that this is a populated area." He testified he had to enforce the Ordinance based "on that interpretation and that was my interpretation."

Commissioner Charles Harris also testified regarding his evaluation of Hauk's application. According to Commissioner Harris, there was no defined parameter for the size of a "populated area" as it was stated in the Ordinance. Commissioner Harris testified that he did not believe the Ordinance's definition of "populated area" for purposes of the setback provision was "all inclusive of a two-mile radius." Commissioner Harris acknowledged the Ordinance did not define the parameters for a "populated area," and therefore, he believed one had to "look back at the overall

6

knowledge of our community and the density of population, the type of homes, the type of lifestyle that people live in areas such as this." His definition of "populated area" within these parameters meant if there is a "cluster of homes of which the closest one if less than two miles from that CAFO the CAFO can't be located in that area." Commissioner Harris acknowledged he and Commissioner Campbell did not agree as to their interpretation of the Ordinance with respect to the definition of "populated area" within the two-mile setback.

This testimony supports the trial court's conclusion that Scotland County's decision was arbitrary. As the trial court noted, each commissioner ignored the language of the Ordinance, and "each applied their self-determined, unwritten standard" to make their determination with respect to the application of the setback provision. The commissioners were attempting to balance the interests of the applicants with those of the residents of the county. However, in doing so, they created a purely subjective interpretation of the Ordinance and its definition of populated area in evaluating Hauk's application, and the commissioners' interpretations of that definition differed. Commissioner Campbell acknowledged he did not apply the setback provision of the Ordinance strictly, as set forth in the Ordinance itself. Instead, his testimony showed he applied criteria, based on his personal observation in evaluating Hauk's application. Commissioner Harris testified he also applied his own separate interpretation of the language contained in the Ordinance. He used subjective criteria, stating he would "try to define an area wherein there are 10 or more homes that's pretty well defined in size." As a result, the trial court did not err in entering judgment in favor of Hauk, finding Scotland

7

County's decision to deny Hauk a county health permit was arbitrary. Point one on appeal is denied.[8]

### III. CONCLUSION

The trial court's judgment is affirmed.

Robert M. Clayton III

ROBERT M. CLAYTON III, Chief Judge

Clifford H. Ahrens, J., and
Gary M. Gaertner, Jr., J., concur.

---

[8] In its second point on appeal, Scotland County claims the trial court erred in finding Hauk's equal protection rights were violated. "The Equal Protection clause prohibits the discriminatory application of land use restrictions among similarly situated landowners." *City of Sugar Creek v. Reese*, 969 S.W.2d 888, 893-94 (Mo. App. W.D. 1988). Each commissioner testified Hauk was not treated any differently than the other applicants with respect to the evaluation of the setback provisions of the Ordinance. Based upon the testimony from each commissioner regarding their consistent application of their individual subjective criteria for evaluating applications, we do not believe there was evidence in the record to show any discriminatory treatment of Hauk compared to other health permit applicants. However, because we affirm the trial court's finding that the denial of Hauk's permit was arbitrary, and therefore unlawful, our consideration of this issue is not dispositive.