

# In the Missouri Court of Appeals
## Western District

COUNTRYCLUB HOMES, LLC and )
VALLEY OAKS REAL ESTATE, LLC, )
                    Appellants, )
v. )
  )
MISSOURI DEPARTMENT OF )      **WD82476**
NATURAL RESOURCES, MISSOURI )      **Consolidated with WD82477**
CLEAN WATER COMMISSION, LONE )
JACK NEIGHBORS FOR )
RESPONSIBLE AGRICULTURE, )      **FILED: December 24, 2019**
POWELL GARDENS, INC., )
ELIZABETH DEICH, RYAN DEICH and )
THE ROBERT M. CHAMNESS TRUST, )
COLLECTIVELY KNOWN AS THE )
POWELL PARTIES, )
                Respondents. )

## APPEAL FROM THE CLEAN WATER COMMISSION

### BEFORE DIVISION FOUR: KAREN KING MITCHELL, CHIEF JUDGE, PRESIDING, LISA WHITE HARDWICK AND CYNTHIA L. MARTIN, JUDGES

Countryclub Homes, LLC and Valley Oaks Real Estate, LLC (collectively, "Valley Oaks") appeal from the decisions of the Clean Water Commission ("CWC") in two cases to deny Valley Oaks's permit application for a concentrated animal feeding operation ("CAFO") in Johnson County. In case number WD82476 ("Lone Jack case"), the entity opposing the permit was Lone Jack Neighbors for Responsible Agriculture, LLC ("Lone Jack"). In case number WD82477 ("Powell case"), the entities opposing the permit

were Powell Gardens, Inc., Ryan Deich, Elizabeth Deich, and the Robert M. Chamness Trust (collectively, "Powell").

In both appeals, Valley Oaks alleges the same four procedural errors in the CWC's decisions to deny its permit application: (1) Lone Jack and Powell lacked standing to challenge the permitting decision of the Department of Natural Resources ("DNR"); (2) the CWC's written decisions were untimely; (3) the CWC issued its decisions without reviewing all of the record; and (4) the CWC's decisions were not approved by four commissioners because the approvals of two commissioners were void. Also in both appeals, Valley Oaks contends the CWC erred in denying its permit on the grounds that its application failed to identify a continuing authority and that Valley Oaks failed to provide neighbor notice prior to filing its application for the CAFO. Lastly, in its appeal of the decision in the Powell case, Valley Oaks asserts the CWC erred in denying its permit on the additional grounds that Valley Oaks failed to provide realistic yield goals for the fields it identified for land application of manure and that Valley Oaks failed to provide for adequate manure storage.

We consolidated the two cases for appeal. For reasons explained herein, we find no error and affirm the CWC's decisions in both cases to deny Valley Oaks's permit application. We remand the cause to the CWC for a determination of Lone Jack's entitlement to attorneys' fees.

FACTUAL AND PROCEDURAL HISTORY

On December 19, 2017, David Ward submitted an application to the DNR for a proposed Class IB CAFO, comprised of approximately 6,999 head of cattle, to be located on property in Johnson County. Ward filed the CAFO permit application in the

2

name of "Country Club Homes LLC." "Country Club Homes LLC" was listed on the application as both the owner and the continuing authority that was to be responsible for the operation, maintenance, and modernization of the facility to which the permit was issued, as required by 10 CSR 20-6.010(3)(A).[1] Ward, however, is the sole member of an entity named "Countryclub Homes, LLC," and not an entity named "Country Club Homes LLC."

The permit application was reviewed by DNR employee Greg Caldwell, who determined that the application met all statutory and regulatory requirements. On June 15, 2018, the DNR issued a Class IB CAFO permit to "County [sic] Club Homes, LLC." Shortly thereafter, Ward applied to the DNR for a transfer of the ownership of the CAFO permit to "Valley Oaks Real Estate, LLC." Ward signed the transfer application as both the previous owner and the new owner. In August 2018, the DNR transferred ownership of the CAFO permit to Valley Oaks Real Estate, LLC.

Meanwhile, Lone Jack appealed the DNR's issuance of the permit by filing a complaint in the Administrative Hearing Commission ("AHC") on June 25, 2018. Lone Jack later filed two amended complaints. In its second amended complaint, Lone Jack alleged that its organization, members, and supporters reside in the immediate vicinity of the location of Valley Oaks's CAFO and the fields where manure from its operations will be spread, and they are adversely affected and aggrieved by the issuance of the permit and the operation of the CAFO. Lone Jack challenged the issuance of the permit on eight grounds.

---

[1] All regulatory references are to the Missouri Code of State Regulations (2016).

Two days later, on June 27, 2018, Powell also filed a complaint in the AHC appealing the DNR's issuance of the permit. Powell later filed an amended complaint, in which it alleged that Powell Gardens, Inc., is Kansas City's botanical garden and cultivates more than 20,000 species of plants and attracts more than 100,000 visitors each year. Powell Gardens, Inc., is less than three miles from the Valley Oaks facility. Powell further alleged that the Deichs, whose property is held by the Robert M. Chamness Trust, live 1,900 feet from the Valley Oaks facility on a historic Missouri Century Farm. Powell alleged that, due to the high animal population density, on-site slaughterhouse, unique CAFO design, and minimal owned-acreage for nutrient management, Valley Oaks's operation was unusual and unproven and would have impacts on water quality and the environment that the DNR has not sufficiently quantified. Powell asserted that the DNR erred in issuing Valley Oaks a permit to operate the facility without sufficiently considering these issues. Powell challenged the issuance of the permit on six grounds.

Valley Oaks intervened in the appeals. The AHC held a consolidated evidentiary hearing for the two appeals on August 27-28, 2018. The AHC issued decisions in both cases on October 23, 2018, recommending that the CWC reverse the DNR's decision to issue the permit. In both decisions, the AHC found that denial of the permit was appropriate on the grounds that Valley Oaks failed to identify a continuing authority, in violation of 10 CSR 20-6.010(3)(A), and failed to provide neighbor notice prior to filing its application, in violation of § 640.715, RSMo 2016,[2] and 10 CSR 20-6.300(3)(C). In the Powell case, the AHC found that denial of the permit was appropriate on two

_____

[2] All statutory references are to the Revised Statutes of Missouri 2016.

4

additional grounds that only Powell raised. These two grounds were that Valley Oaks failed to provide realistic yield goals for the fields it identified for land application of manure, in violation of 10 CSR 20-6.300(3)(G)2.A, and that Valley Oaks failed to provide for adequate manure storage, in violation of 10 CSR 20-6.300(1)(A)11 and 10 CSR 20-8.300(5)(B)2.

As required by the administrative review procedures, the AHC forwarded the administrative record to the CWC for final decision. The record was comprised of the AHC proceedings in the appeals of the Lone Jack and Powell cases but did not include the proposed recommended findings that the parties had submitted to the AHC. On December 10, 2018, the CWC heard oral arguments on both appeals during a single hearing and ultimately voted 4-1 in both cases to adopt the AHC's recommended decisions. The CWC issued its final written decisions in the cases on January 7, 2019. Valley Oaks appeals both decisions, and we consolidated the appeals.[3]

## STANDARD OF REVIEW

Pursuant to Section 644.051.6, the CWC's decisions are subject to appellate review pursuant to Chapter 536 of the Administrative Procedure Act. *In re Trenton Farms RE, LLC v. Mo. Dep't of Nat. Res.,* 504 S.W.3d 157, 160 (Mo. App. 2016). Our review is limited to determining whether the CWC's action: (1) violates a constitutional provision; (2) exceeds the CWC's statutory authority or jurisdiction; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious, or unreasonable; or (7) involves an abuse of discretion. § 536.140.2.

---

[3] In their respective cases, Lone Jack and Powell filed motions to dismiss Valley Oaks's appeal. We deny those motions.

5

We defer to the CWC's findings of fact so long as they are supported by competent and substantial evidence. *Trenton Farms*, 504 S.W.3d at 160. We review questions of law *de novo*. *Id.* The CWC's decision "is presumed valid, and the burden is on the party attacking it to overcome that presumption." *Wagner v. Mo. State Bd. of Nursing*, 570 S.W.3d 147, 152 (Mo. App. 2019) (citation omitted).

## ANALYSIS

### *Point I – Standing*

In Point I, Valley Oaks asserts that Sections 644.051 and 640.013 allow only permit applicants or potential permit applicants to appeal adverse decisions made by the Director of the DNR ("the Director"), and that Lone Jack and Powell are not included in either class. Therefore, Valley Oaks contends the CWC erred in denying its permit because Lone Jack and Powell lacked standing to appeal from the Director's decision.

Standing is a question of law subject to our *de novo* review. *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011). "Standing is a necessary component of a justiciable case that must be shown to be present prior to adjudication on the merits." *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013) (citation omitted). "Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *St. Louis Ass'n of Realtors v. City of Ferguson*, 354 S.W.3d 620, 622-23 (Mo. banc 2011) (citation omitted).

"Not every person who files a protest and is given an opportunity to be heard by an administrative agency has a right to appeal from the decision of the agency[.]" *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 276 (Mo. App. 2000).

6

Instead, a party attempting to successfully assert standing must have a legally protectable interest. *St. Louis Ass'n*, 354 S.W.3d at 623. "A legally protectable interest exists only if the [party] is affected directly and adversely by the challenged action or if the [party]'s interest is conferred statutorily." *Id.*

The General Assembly, in recognizing the necessity of state action to retain control of its water pollution control programs after Congress made amendments to the Federal Water Pollution Control Act in 1972, enacted the "Missouri Clean Water Law,"[4] which created, *inter alia*, an elaborate permitting scheme for persons[5] seeking to discharge water contaminants. Under this scheme, the permitting of CAFOs, in the first instance, falls to the Director. *See* 10 CSR 20-6.300(E); see *also* § 640.715. At issue in this point is who has standing to appeal from the Director's decision.

Section 640.010.1 provides, in pertinent part, that the Director "shall faithfully cause to be executed all policies established by the boards and commissions assigned to the department, *be subject to their decisions as to all substantive and procedural rules and his or her decisions shall be subject to appeal as provided by law*." (Emphasis added). Valley Oaks asserts that this version of Section 640.010.1 limits standing to appeal the Director's decision to only a narrow class of persons. In support of this contention, Valley Oaks argues that a previous version of Section 640.010 stated that "affected parties" had the right to appeal and that, by amending the section to state

---

[4] Sections 644.006, *et seq.*

[5] As used in the Missouri Clean Water Law, the term "person" means "any individual, partnership, copartnership, firm, company, public or private corporation, association, joint stock company, trust, estate, political subdivision, or any agency, board, department, or bureau of the state or federal government, or any other legal entity whatever which is recognized by law as the subject of rights and duties[.]" § 644.016(15).

that appeals may be taken "as provided by law[,]" the legislature signaled its intention to limit the ability to appeal to those persons explicitly contemplated *by statute.* Valley Oaks then contends that, by enacting Section 644.051.6, the legislature intended the AHC to take appeals only from permit applicants and potential applicants. Section 644.051.6 states, in pertinent part:

> The director shall promptly notify the applicant in writing of his or her action and if the permit is denied state the reasons for such denial. As provided by sections 621.250 and 640.013, the applicant may appeal to the administrative hearing commission from the denial of a permit or from any condition in any permit by filing a petition with the administrative hearing commission within thirty days of the notice of denial or issuance of the permit. After a final action is taken on a new or reissued general permit, a potential applicant for the general permit who can demonstrate that he or she is or may be adversely affected by any permit term or condition may appeal the terms and conditions of the general permit within thirty days of the department's issuance of the general permit.

Valley Oaks's contention that Sections 640.010.1 and 644.051.6 limit the right to appeal to permit applicants or potential applicants is wrong for several reasons.

In 2005, the legislature transferred the authority to hear all contested case administrative appeals granted in Chapter 640 and the Missouri Clean Water Law to the AHC. *See* 621.250.1; *see also Valley Park Props., LLC v. Mo. Dept. of Nat. Res.*, 580 S.W.3d 607, 616 (Mo. App. 2019). Section 621.250.2 states, in pertinent part, that:

> Except as otherwise provided by law, *any person or entity who is a party to, or who is aggrieved or adversely affected by, any finding, order, decision, or assessment for which the authority to hear appeals was transferred to the administrative hearing commission in subsection 1 of this section may file a notice of appeal with the administrative hearing commission* within thirty days after any such finding, order, decision, or assessment is placed in the United States mail or within thirty days of any such finding, order, decision, or assessment being delivered, whichever is earlier.

(Emphasis added).

8

At no point in its brief does Valley Oaks assert that Lone Jack and Powell were not adversely affected by the issuance of a permit to Valley Oaks. Instead, Valley Oaks argues that, despite the legislature's clear expression of intent in Section 621.250.2 to allow "any person or entity who is a party to, or who is aggrieved or adversely affected by" a decision of the Director to appeal, Lone Jack and Powell do not have standing to appeal because Section 644.051.6 provides that a narrower class of persons or entities – only applicants or potential applicants — may take appeals from the Director's decision. This argument, however, has already been specifically rejected by our Supreme Court in *Missouri Coalition for the Environment v. Herrmann*, 142 S.W.3d 700, 702 (Mo. banc 2004).

In *Herrmann*, the Court stated that "Section 644.051.6 does not limit the right of appeal to the [CWC] solely to those denied a permit[.]" *Id.* Nevertheless, Valley Oaks argues that, after *Herrmann*, the legislature's amendment of Section 640.010 to remove language that granted "affected parties" the right to appeal signaled the legislature's repudiation of the Court's holding in *Herrmann*. Valley Oaks misunderstands the effect of the amendment. While the legislature has amended Sections 644.010.1 and 644.051.6 since the Supreme Court's decision in *Herrmann*, it has neither implicitly nor explicitly abrogated that opinion.[6] Further, the *Herrmann* Court did not base its decision on the then-in-force language of Section 640.010.1 or predicate its holding on any language that has since been amended. *See* 142 S.W.3d at 702. The Court merely mentioned that Section 640.010.1 provides that the Director's decisions are subject to appeal before it held that Section 644.051.6 did not limit the right to appeal

---

[6] *See, e.g.*, § 287.020.10, wherein the Legislature specified that amendments to the Workers' Compensation Law were intended to "reject and abrogate earlier case law interpretations."

the decisions of the Director to any exclusive class. *See id.* Put another way, the Court did not state that it was ruling as it did *because* of any particular language in Section 640.010.1. *See id.* Therefore, *Herrmann* still binds this court. *See* MO. CONST. art V, § 2. The CWC did not err in holding that Lone Jack and Powell had standing to appeal the Director's decision. Point I is denied.

**Point II – Failure to Issue Decision Within 180 Days**

In Point II, Valley Oaks contends the CWC exceeded its statutory authority by failing to issue its decision within the statutorily-prescribed time period. Valley Oaks argues that the failure to comply with the statute's deadline rendered the CWC's decision null and void and, therefore, the DNR's decision to issue the permit should be allowed to stand.

As set forth in Section 621.250.2, any party aggrieved by the DNR's decision appeals to the AHC. The AHC is authorized to hold a hearing and send a recommended decision to the CWC along with the record. § 621.250.2-3. The CWC's final decision "shall be issued" within 180 days of the date the notice of appeal to the AHC was filed. § 621.250.3. The date by which the CWC is required to issue its final decision "may be extended at the sole discretion of the permittee as either petitioner or intervenor in the appeal." *Id.*

Here, after the DNR issued the permit to Valley Oaks, Lone Jack filed its notice of appeal to the AHC on June 25, 2018, while Powell filed its notice of appeal on June 27, 2018. The AHC held hearings and made recommended decisions in both cases, which it then transmitted along with the record to the CWC. Pursuant to Section 621.250.3, the CWC's final decision in the Lone Jack case was due on December 22,

10

2018, and the CWC's final decision in the Powell case was due on December 24, 2018. The permittee, Valley Oaks, did not extend the time period beyond these dates. On December 10, 2018, all parties were present when the CWC voted 4-1 to deny the permit; however, the CWC did not issue its final decision in both cases until January 7, 2019. Valley Oaks argues that, because Section 621.250.3 states that the CWC's decision "shall be issued" within 180 days of the date the notice of appeal to the AHC was filed, the issuance of the decisions within that time period was mandatory and, consequently, the CWC's untimely decisions reversing the DNR's decision to issue the permit were null and void.

Our Supreme Court has explained that, when the legislature uses the word "shall" in a statute, the issue "is not whether 'shall' means 'shall' but what sanction (if any) the legislature intended to apply" when the required act is not done. *Frye v. Levy*, 440 S.W.3d 405, 408 (Mo. banc 2014). If the legislature has imposed a sanction or otherwise indicated a consequence for noncompliance, then the statute is a mandatory statute, and courts will enforce the intended sanction or consequence for noncompliance. *Id.* If, however, the legislature has not approved a sanction or has not otherwise indicated a consequence for noncompliance, then the statute is a directory statute. *Id.* A directory statute's "terms are limited to what is required to be done," and courts will not create a sanction or consequence for noncompliance where the legislature has not expressed an intent for such sanction or consequence. *Id.* at 409 (quoting *Hudgins v. Mooresville Consol. Sch. Dist.*, 278 S.W. 769, 770 (Mo. 1925)).[7]

---

[7] The Court in *Frye* explained in detail the difference in the language of mandatory and directory statutes:

Two examples of when a statute that imposes an obligation will be construed to be "mandatory" are: (a) if the statute explicitly provides what the consequence of non-

11

The determination as to whether a statute is mandatory or directory turns on the language the legislature has chosen. *Id.* at 410. Section 621.250.3 imposes an obligation on the CWC to issue its final decision within 180 days of the date the notice of appeal to the AHC is filed. It does not, however, explicitly provide that the CWC may issue its decision only within that 180 days, nor does it explicitly provide that the CWC lacks the authority to issue a decision after the 180th day. "In the absence of such legislative intent, courts have no authority to impose such a sanction on their own." *Id.*

The Court in *Frye* recognized that, while "[t]he lack of statutory approval for a sanction in the event of non-compliance with a statutory obligation, or the lack of any language permitting only acts that are in compliance with that obligation, is an important factor" in distinguishing between mandatory and directory statutes, other factors may be considered. *Id.* Indeed, the Court noted that, "[u]ltimately, whether a statute is mandatory or directory is a 'function of context and legislative intent.'" *Id.* at 410-11 (quoting *Bauer v. Transitional Sch. Dist. of City of St. Louis*, 111 S.W.3d 405, 408 (Mo. banc 2003)).

---

compliance will be (e.g., that any act performed after the stated deadline or in a manner different than the required method will be void or ineffective); and (b) if the statute explicitly provides that the required action can be taken *only* before the stated deadline or can be performed **only** in the stated manner. *See, e.g., [West v.]Ross*, 53 Mo. [350], 354 [(Mo. 1873)] ("the legislature has not only by the statute directed what shall be done, but has also declared what consequence shall follow disobedience"); *Greene v. Holt*, 76 Mo. 677, 680 (1882) ("Negative words are imperative.") (citing Sedgwick [on Stat. Const.], at 316, 320, and 325). On the other hand, if a statute imposes an obligation and does not explicitly allow only compliant actions (or explicitly declare non-compliant actions void or ineffective), the statute likely is "directory" and courts are not free to create and impose a sanction that the legislature did not approve.

440 S.W.3d at 410.

12

Valley Oaks argues that, despite the lack of an explicit sanction or of language allowing only compliant acts, the context of the statute indicates that Section 621.250.3's time limit is mandatory. Specifically, Valley Oaks argues that the legislature has created an "elaborate permitting system with the goal of promoting business and maximizing employment in the State" and, within the statutory scheme, the legislature has "provided a series of rapid deadlines ensuring applicants certainty in applying for permits and planning business operations."[8] Valley Oaks contends that, collectively, this statutory scheme "demonstrates a legislative intent of expedient issuance and review throughout the permitting process."

Notwithstanding this argument, we find nothing in the relevant statutes to indicate that the CWC's final decision must be invalidated if the 180-day time frame is exceeded. It is noteworthy that the Legislature has included consequences for the failure to follow the time deadlines contained in the permit process statutory scheme when it so chooses. For example, Section 640.018.1 provides that, in any case where the DNR "has not issued a permit or rendered a permit decision by the expiration of a statutorily required time frame for any application for a permit . . . , upon request of the permit applicant, the [DNR] shall issue the permit the first day following the expiration of the required time frame[.]" That the legislature explicitly provided a consequence for the DNR's failure to render a permit decision within the statutorily-required time frame – but

_____

[8] Valley Oaks has listed several of these deadlines, including: (1) the DNR shall issue or deny permits within 60 days under Section 644.051.5-6; (2) the DNR shall issue or respond with a letter of comment to CAFO permit applicants within 45 days under Section 640.715.3; (3) appeals of DNR permit decisions must filed with the AHC within 30 days of the decision under Section 621.250.2; (4) the AHC may hold hearings within 90 days of the filing of the notice of appeal under Section 621.250.2; (5) the AHC shall make its recommended decision within 120 days of the filing of the notice of appeal under Section 621.250.2; and (6) the AHC must transmit its record and recommended decision to the CWC within 15 days after the AHC has rendered its recommended decision under Section 621.250.3.

13

did not do so for the CWC's failure to timely issue its final decision – further supports the conclusion that Section 621.250.3 is a directory, and not mandatory, statute. Therefore, we cannot conclude that the CWC's decisions are null and void because the CWC failed to comply with this directory statute.[9]  Point II is denied.

### Point III – The CWC's Review of the AHC's Record

In Point III, Valley Oaks contends the CWC committed reversible error by issuing its final decisions before reviewing "missing portions" of the AHC's record, namely, the parties' proposed recommended decisions that they submitted to the AHC. Valley Oaks asserts that, at the end of oral arguments before the CWC, the CWC agreed to receive and review the proposed recommended decisions but never did so.

Administrative appeals of the DNR's permitting decisions are contested cases, which are governed, *inter alia*, by Chapter 536 and Section 621.250. *See* 621.250.1. Section 536.080.2 states:

> In contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited or referred to in the arguments or briefs. The parties to a contested case may by written stipulation or by oral stipulation in the record at a hearing waive compliance with the provisions of this section.

Valley Oaks argues that, by not reviewing the parties' proposed recommended decisions submitted to the AHC, the CWC neglected the statutory prerequisite of

---

[9] To enforce Section 621.250.3's requirement that the CWC issue its final decisions within the 180-day time limit, Valley Oaks could have sought a writ of mandamus compelling the CWC to do so. *See, e.g., Am. Civil Liberties Union v. Ashcroft*, 577 S.W.3d 881, 895-96 (Mo. App. 2019).

14

"personally consider[ing] the portions of the record cited or referred to in the arguments or briefs" before exercising its authority to render a final decision in both cases.

Contrary to Valley Oaks's assertion, the page in the record to which it cited does not indicate that the CWC agreed to receive and review the parties' proposed recommended decisions before rendering its final decisions. In any event, Valley Oaks has not demonstrated how the CWC's failure to review the proposed recommended decisions means that the CWC failed to "personally consider the portions of the record cited or referred to in the arguments or briefs." Valley Oaks argues that the proposed recommended decisions "included the parties' respective positions along with citations to legal authority and evidence on which they relied – and show Powell abandoned one argument." The parties had oral arguments before the CWC, however, during which they were each given an opportunity to argue their respective positions with legal authority and citations to the record. During oral arguments, Valley Oaks used a PowerPoint presentation to "walk through each one of the items" of the AHC's recommended decision that it believed was incorrect. Included in Valley Oaks's presentation was its assertion of Powell's purported abandonment of one of its arguments.

In this appeal, Valley Oaks does not articulate the specific position, legal authority, or citations to the record contained in its proposed recommended decision – but not in its subsequent oral argument to the CWC – that the CWC needed to consider but did not do so because of the CWC's failure to review the parties' proposed recommended decisions. "[T]here is a presumption that administrative decisions are made in compliance with applicable statutes." *Stith v. Lakin*, 129 S.W.3d 912, 920 (Mo.

15

App. 2004) (citation omitted). By not specifying the information in the proposed recommended decision that the CWC did not consider, Valley Oaks has failed to rebut this presumption. Valley Oaks has not demonstrated how the omission of the proposed recommended decisions rendered the record before the CWC deficient. "It is not the function of the appellate court to serve as advocate for any party to an appeal." *See Falls Condo. Owners' Ass'n, Inc. v. Sandfort*, 263 S.W.3d 675, 676 (Mo. App. 2008) (citation omitted).

Moreover, we note that Section 621.250.3, which specifically governs appeals of DNR decisions to the CWC, states that the CWC's final decision "shall be *based only on the facts and evidence in the hearing record*[.]" (Emphasis added). Valley Oaks does not assert that the parties' proposed recommended decisions constituted either "facts" or "evidence" as contemplated by Section 621.250.3. Indeed, statements made in briefs submitted to the court are generally not considered evidence. *See State ex rel. Dixon v. Darnold*, 939 S.W.2d 66, 69 (Mo. App. 1997). As the parties' proposed recommended decisions were neither facts nor evidence, the CWC did not err in failing to review them before rendering its final decision. Valley Oaks has not demonstrated that the CWC neglected its statutory obligations under Sections 536.080.2 or 621.250.3. Point III is denied.

### Point IV – The Validity of the Commissioners' Approvals

In Point IV, Valley Oaks contends the CWC's decisions were arbitrary, capricious, unreasonable, and in excess of its statutory authority because they were not validly approved by four commissioners as required by Section 644.066.3(3). In the Lone Jack case, Commissioners Ashley McCarty, Patricia Thomas, John Reece, and

16

Allen Rowland voted to approve and adopt the AHC's recommended decision as the CWC's final decision, while Commissioner Stan Coday voted to disapprove the AHC's recommended decision. In the Powell case, Commissioners McCarty, Thomas, Reece, and Coday voted to approve and adopt the AHC's recommended decision as the CWC's final decision, while Commissioner Rowland voted to disapprove the AHC's recommended decision. Valley Oaks argues that, even though four commissioners approved each decision, the approval of Commissioner Reece was void in both cases, and the approval of Commissioner Coday was void in the Powell case.

With regard to Commissioner Reece, Valley Oaks asserts that his approval was void because he improperly considered information outside the record in making his decision. At the start of the hearing before the CWC, Valley Oaks made an oral motion to disqualify Commissioner Reece because he visited Valley Oaks's proposed facility during the pendency of the appeal. In response, Commissioner Reece stated, "I did visit Valley Oaks, mainly for my own edification to see what was there and to see what type of an operation they had." He further stated, "And if that disqualifies me, then something is wrong. I'm trying to educate myself as to what is going on, and I think visiting the site gave me a lot of insight into this whole proceeding." The remaining four commissioners then voted to deny Valley Oaks's motion to disqualify Commissioner Reece. Valley Oaks further argues that, later in the hearing, Commissioner Reece indicated that he did not have to accept as correct the engineering report submitted with Valley Oaks's permit application simply because the report was sealed by a professional engineer.

17

On appeal, Valley Oaks does not argue that the CWC erred in refusing to disqualify Commissioner Reece. Instead, Valley Oaks argues that Commissioner Reece's comments show that his decision was contrary to Section 621.250.3's mandate that the CWC's final decision "shall be based only on the facts and evidence in the hearing record[.]" We disagree. Commissioner Reece voted to approve the AHC's recommended decisions in both cases in their entirety and without any modifications. Valley Oaks does not specify *anything* in the AHC's recommended decisions – including its explanation in the Powell case for rejecting Valley Oaks's engineering report – that was based upon facts or evidence outside the record. Thus, despite Commissioner Reece's comments during the hearing, it appears that his *final decisions* were based only on the facts and evidence in the hearing record, as Section 621.250.3 required.[10] Valley Oaks has not met its burden of demonstrating that Commissioner Reece violated Section 621.250.3.

Regarding Commissioner Coday, Valley Oaks contends that his approval of the AHC's recommended decision in the Powell case was void because he did not approve the AHC's recommended decision in the Lone Jack case. As detailed *supra*, in the Lone Jack case, the AHC recommended overturning the DNR's permitting decision based on two grounds: Valley Oaks's failure to prove a continuing authority and its

---

[10] Valley Oaks's reliance on *Hauk v. Scotland Cty. Comm'n*, 429 S.W.3d 459 (Mo. App. 2014), is misplaced. *Hauk* was an appeal from the circuit court's decision in a non-contested case. *Id.* at 461. In explaining their reasons for denying the health permit in *Hauk*, the commissioners' testimonies during the hearing before the circuit court indicated that they ignored the language of the ordinance they were purportedly applying and, instead, "'each applied their self-determined, unwritten standard' to make their determination with respect to the application of the [ordinance]." *Id.* at 463. Hence, on appeal, the Eastern District of this court properly affirmed the circuit court's finding that the commission's decision to deny the permit was arbitrary. *Id.* In these contested cases, regardless of Commissioner Reece's comments during the hearing before the CWC, the CWC's final decisions indicate that the decisions were based solely upon evidence in the record and, therefore, were not arbitrary or capricious.

18

failure to provide the required neighbor notice. In the Powell case, the AHC recommended overturning the DNR's permitting decision based those same two grounds, plus two other grounds: Valley Oaks's failure to provide a compliant nutrient management plan and its failure to ensure the requisite minimum days of manure storage. Valley Oaks argues that, because the two grounds in the Lone Jack case overlapped with two of the four grounds in this case, Coday's approval in the Powell case was arbitrary and capricious. We disagree.

Valley Oaks points to no statute or regulation requiring commissioners to explain their votes or reasoning. It is only when the CWC modifies or does not adopt the AHC's recommended decision that the CWC must explain the specific reason why. § 621.250.3. While we do not know why Coday did not approve the AHC's recommended decision in the Lone Jack case, a simple explanation could be that he found the other two grounds for denying the permit in the Powell case – the failure to provide realistic yield goals for the fields it identified for land application of manure and the failure to provide for adequate manure storage – more persuasive. Valley Oaks has not demonstrated that Coday's approval of the AHC's recommended decision in the Powell case was arbitrary and capricious. Point IV is denied.

**Points V, VI, and VII – Continuing Authority and Transfer**

In Points V and VI, Valley Oaks asserts that the CWC erred in determining that its permit application was deficient because it failed to identify a continuing authority. Valley Oaks contends any typographical error associated with its identification of "Country Club Homes LLC" as the continuing authority for the operation and maintenance of the CAFO was not fatal to the permitting process and that, in approving

19

the permit, the DNR properly followed its "historical application" of the regulations addressing the issuance of permits. In Point VII, Valley Oaks asserts that the CWC erred in determining that, based on the failure to identify a continuing authority in the permit application, the subsequent transfer of the permit was ineffective.

In denying the permit to Valley Oaks, the CWC concluded that Valley Oaks "failed in th[e] simple task [of identifying the entity to serve as a continuing authority], and the DNR failed to ask it to correct the mistake pursuant to 10 CSR 20-6.300." The CWC made the following findings of fact in support of this ruling: On December 19, 2017, Ward submitted a permit application for a proposed CAFO. Greg Caldwell, an employee of the DNR for more than thirty years, reviewed the application. The application listed "Country Club Homes LLC" as both the owner and continuing authority for the CAFO facility. The CWC determined that a "Certificate of No Record," dated June 27, 2018, from the Missouri Secretary of State indicates than no entity named "Country Club Homes LLC," with the address [as stated on the permit] exists. Caldwell testified that he had reviewed the Secretary of State's website and found information for an entity named "Countryclub Homes, LLC" and assumed that the application identifying "Country Club Homes LLC" as the continuing authority merely contained a typographical error. The CWC found that "Caldwell did not communicate with the permit applicant or the [permit applicant's] engineer concerning the purported typographical error."

Nevertheless, on June 15, 2018, the DNR issued the instant permit for the operation of a Class IB CAFO. The permit had another typographical error and was issued to "County [sic] Club Homes, LLC." Ward then requested the permit be transferred to "Valley Oaks Real Estate, LLC." On August 9, 2018, the DNR issued the

20

modified permit "for ownership transfer and facility name change" to Valley Oaks Real

Estate, LLC.

10 CSR 20-6.010(3)(A), in effect at the time of Valley Oaks's permit application,

states:

> All applicants for construction permits or operating permits shall show, as part of their application, that a permanent organization exists which will serve as the continuing authority for the operation, maintenance, and modernization of the facility for which the application is made. Construction and first-time operating permits shall not be issued unless the applicant provides such proof to the department and the continuing authority has submitted a statement indicating acceptance of the facility.

The term "continuing authority" is not defined in the text of the regulations, *see* 10 CSR

20-2.010,[11] but we have previously stated that, under agency interpretations of 10 CSR

20-6.010(3) applicable here, the regulation "requires only a showing that an entity was a

permanent organization to satisfy the 'continuing authority' requirements." *Trenton*

*Farms*, 504 S.W.3d at 164. Thus, 10 CSR 20-6.010(3) necessitates only that the

applicant "*identify* the entity which will serve the function [of operating, maintaining, and

modernizing the CAFO facility.]" *Id.* at 166.

Here, we agree with the CWC that Valley Oaks failed to identify the entity serving

as a continuing authority. As a general matter, to be registered as a limited liability

company in the State of Missouri, an entity must, *inter alia*, have a name that is

"distinguishable upon the records of the secretary from the name of any corporation,

limited liability company, limited partnership, limited liability partnership, or limited

---

[11] 10 CSR 20-2.010 has since been amended to include a definition of continuing authority. 10 CSR 20-2.010(19). This amendment is immaterial to the disposition of this appeal, however, as we apply the regulations that were in effect at the time of the permit application. *See, e.g., State ex rel. Wolfhole, Inc. v. Scott Cty. Soil & Water Conservation Dist.*, 880 S.W.2d 908, 910 (Mo. App. 1994).

liability limited partnership which is licensed, organized, reserved, or registered under the laws of this state as a domestic or foreign entity, unless" one of two inapplicable exceptions excuses the noncompliance.  § 347.020(3).

The term "distinguishable" is not defined in the statute, so we look to a dictionary to determine the term's meaning.  *Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 187 (Mo. banc 2019).  "Distinguishable" is defined as "capable of being distinguished," *Distinguishable*, WEBSTER'S THIRD NEW INT'L DICTIONARY 659 (2002), while the term "distinguish" means: (1) "to perceive as being separate or different: [to] recognize a difference in"; or (2) to mark as separate or different (as one thing from another)."  *Distinguish*, WEBSTER'S THIRD NEW INT'L DICTIONARY 659 (2002).  There is no doubt that the entities "Country Club Homes LLC" and "Countryclub Homes, LLC" are distinguishable from one another because they are easily perceivable as different from one another.  This observation is further supported by the fact that one entity exists on the records of the Secretary of State *and the other does not.*

Moreover, a limited liability company's name, as set forth in its articles of organization, "shall be the name under which the limited liability company transacts business in this state unless the limited liability company registers another name under which it transacts business as provided under chapter 417 or conspicuously discloses its name as set forth in its articles of organization."  § 347.020(1).  Valley Oaks does not contend that "Countryclub Homes, LLC" registered the name "Country Club Homes LLC" to transact business pursuant to Chapter 417 or that it conspicuously disclosed its actual name during the permitting process.  Instead, Valley Oaks argues that any typographical error was cured because the DNR was able to intuit the correct permit

22

applicant through context clues and additional investigation.  However, this effort to cure

the deficiencies was in excess of the DNR's authority because neither the regulation nor

statute[12] provides for any such internal correction mechanism.  Rather, the regulations

provide the following procedure for the DNR to handle incomplete or deficient

applications:

> When an application is submitted incomplete or any of the required permit documents are deficient, or if additional information is needed including, but not limited to, engineering design plans, the department *will act in one (1) of the following ways*:
>
> A. The department may return the entire permit application back to the applicant for re-submittal; or
>
> B. The applicant and/or the applicant's engineer will be notified of the deficiency and will be provided time to address department comments and submit corrections. Processing of the application may be placed on hold until the applicant has corrected identified deficiencies.

10 CSR 20-6.300(2)(E)4 (emphasis added).

The regulation requires that the DNR, when presented with a deficient permit, will

either return all permit application documents to be resubmitted or notify the applicant

and/or the applicant's engineer of the deficiency and provide the applicant and/or

applicant's engineer with the opportunity to cure the deficiency.[13]  While we have no

doubt that the DNR could, on its own, create fully-compliant permit applications in short

---

[12] In rendering its decision, the CWC determined that Section 644.052.8, which authorizes the modification of permits, did not give the DNR the authority to make the changes to the permit application at issue here.  As Valley Oaks does not challenge this finding on appeal, we will not address it. *See Lewis v. Fort Zumwalt Sch. Dist.*, 260 S.W.3d 888, 890 (Mo. App. 2008); Rule 84.13(a).

[13] In fact, the record contains several examples of Caldwell offering Valley Oaks's engineer the opportunity to correct other deficiencies.

order, nothing in the text of the regulation or in any provided agency interpretation gives the DNR the authority to *sua sponte* correct the deficiencies at issue here. *See id.*

The record supports the CWC's determination that Valley Oaks failed to complete the "simple task" of correctly identifying the permanent entity that would operate as the CAFO's continuing authority and that the DNR did not follow 10 CSR 20-6.300(2)(E)4 when it failed to ask Valley Oaks to correct this mistake. Valley Oaks has not demonstrated how this finding was in conflict with the plain meaning of the regulation or with the DNR's historical application of any regulation. The CWC did not err in denying Valley Oaks's permit application on the ground that the application failed to identify a continuing authority. Consequently, the CWC did not err in further holding that, because the continuing authority on the original permit was a non-existent entity, the transfer of the permit to "Valley Oaks Real Estate, LLC" was ineffective under 10 CSR 20-6.010(11)(A). Points V, VI, and VII are denied.

Having found that the CWC properly denied the permit on the ground that the permit application failed to identify a continuing authority, we need not address Valley Oaks's challenges to the CWC's remaining grounds for denying the permit presented in Points VIII and IX in the appeal of the Lone Jack case and Points VIII-XIV in the appeal of the Powell case. *See Knight v. Con-Agra Foods, Inc.*, 476 S.W.3d 355, 358-59 (Mo. App. 2015).

***Lone Jack's Motion for Attorneys' Fees***

Prior to the submission of its case, Lone Jack filed a motion for attorneys' fees on appeal pursuant to Section 536.087.1, which states:

> A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state, shall be awarded those

reasonable fees and expenses incurred by that party in the civil action or agency proceeding, unless the court or agency finds that the position of the state was substantially justified or that special circumstances make an award unjust.

Section 536.087.2 similarly authorizes the award of reasonable fees and expenses "to a party who prevails in any action for judicial review of an agency proceeding . . . unless the court finds that during such agency proceeding the state was substantially justified, or that special circumstances make an award unjust."

A party seeking to recover attorneys' fees and expenses is required to file its application for fees to the body before which it *first* prevailed. *See* § 536.087.3; *see also* § 536.087.4; *Mo. Real. Estate Appraisers Comm'n v. Funk*, 492 S.W.3d 586, 593-94 (Mo. banc 2016). Here, there is no dispute that Lone Jack has filed the necessary application before the CWC. In light of our affirmance of the administrative decision, we must remand this cause to the CWC to determine whether, pursuant to Section 536.087, Lone Jack is entitled an award of attorneys' fees. *See also* § 536.087.4; *Funk*, 492 S.W.3d at 593-94.

### CONCLUSION

The CWC's final decisions in the Lone Jack and Powell cases are affirmed. The cause is remanded to the CWC for a determination of Lone Jack's entitlement to attorneys' fees.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

25